said: "I think the conclusion of the district court in this case was correct. In a voluntary endeavor to deliver the appellants' vessel and cargo from the great peril of loss, the master cut her loose, in circumstances involving great risk of collision with the respondents' vessel, and, after she was cut loose, he omitted to cast her anchors, or put up a sail, or, in fact, do anything to arrest her, and for the like reason, namely, that taking such measures might prevent his delivering the vessel and cargo from the peril he was seeking to avoid. His acts and omissions in this respect were at the risk of his own vessel and her owners, and they are responsible. The master had no more legal right to do acts or omit precautions, which acts and omissions directly tended to injury to another, in order to save property to its owners, than he would have in order to earn property for them. On the question, whether the grounding of the libellants' vessel and the resulting damage were caused by the collision, the testimony is conflicting. But I find no sufficient reason for reversing the conclusion of the commissioner and of the district judge. The decree must be affirmed, with costs."

## Case No. 12,768.

SHERMAN v. The NEVADA.

[See Case No. 5,839.]

## Case No. 12,769.

SHERMAN et al. v. PENNSYLVANIA R. CO.

[8 Wkly. Notes Cas. 269.]

Circuit Court, D. Pennsylvania. Jan. 23, 1880.

RAILROADS — MOB — RIOTS — STRIKE — TRANSIT — COMMON CARRIERS — LIABILITY OF, IN THE EVENT OF LOSS OF PROPERTY BY VIS MAJOR.

1. Plaintiffs shipped goods from Chicago to Philadelphia by rail, and took a bill of lading from the company defendant exempting the defendant, inter alia, from liability for "loss or damage on any article or property whatever by fire or other casualty while in transit or while in depots or places of transshipment." The goods, owing to a general strike of defendant's employés, were stopped en route outside of, but near, the company's depot at Pittsburgh, an intermediate point. During this detention the defendants' property, including these goods, was threatened by a mob, and finding it impossible to maintain their property in security, they called upon the proper county and state authorities for their aid, which having proved ineffectual, the goods were burnt up by the mob. The detention lasted three days, during which the defendants were forcibly dispossessed of their property, including the plaintiffs', by the superior force of the mob. Trains continued to arrive during the time, which were stopped at Pittsburgh by the mob. At the time the mob obtained possession, a train of petroleum cars was standing braked at some distance from the plaintiffs' property, and at or before the fire, these cars were moved to those which contained the plaintiffs' property, and all were burnt up together. In a suit to recover the value of the goods, held, that the defendants were not liable, as the facts disclosed no negligence on their part that had contributed to or caused the loss. The loss of the goods occurred while they were in transit, and was caused by fire within the meaning of the exception in the bill of lading, protecting the defendants.

2. It is the duty of common carriers to convey the goods shipped to the point of delivery without unavoidable delay, and apart from the conditions in the bill of lading, they are liable for loss from any cause, save the act of God or a public enemy. The defendants continued subject to all the liabilities of common carriers, except for losses happening from causes named in the exception, in which there had been no negligence of defendant's servants, while in the discharge of their duty. The defendant, as a common carrier, is liable for any interruption to the transit, caused by the refusal of its servants to perform their duty, which occasioned loss to the plaintiffs.

3. The loss here was not caused by the strike of the defendant's employés, nor was there any permissive allowance by the defendant that the plaintiffs' goods should be stopped in transit. The defendant's default was merely technical, and did not cause, or contribute to the loss. The defendant, under the condition in the bill of lading, was exempt from liability for loss by fire while the goods were in transit, unless occasioned by its default, and its inability to resist the superior force of a mob; and the consequent involuntary relinquishment of possession of the goods and the forced detention of them by the mob was not such default; nor is there any evidence of defendant's default in permitting the arrival of freight trains at Pittsburgh on three consecutive days, during which the mob took and retained possession of the defendant's property, or in their leaving under the circumstances a large number of cars loaded with petroleum in their yard near the plaintiffs' property. The transit of the plaintiffs' goods continued in law, so as to protect the defendant, under the exception in the bill of lading, during the whole period of the continuation of its duty as a carrier to protect the goods. The goods not having reached their destination, were, therefore, legally in transit, until they were destroyed.

Assumpsit, by Sherman, Hall and Co., against the Pennsylvania Railroad Company to recover the value of fifty-three sacks of wool.

A stipulation was filed by counsel waiving a jury trial and referring all facts to the circuit judge under section 649 of the Revised Statutes (page 117), and requesting the court to pass upon, and find specially the facts alleged in the points submitted. The facts, as found by the circuit judge who tried the case, were as follows:

(1) The value of the goods in controversy was, on the 22d day of July, 1877, at the point of shipment, $18,060.38, and at the point of destination $20,972.97.

(2) The said goods had, in course of transit from their place of shipment to their respective destinations, reached the city of Pittsburgh at least twenty-four hours before the fire occurred in said city, on July 21 and 22, 1877, and were then in defendant's custody in the cars in which they had been shipped, and the said cars and the said goods were burned in said fire.

(3) The defendant, about July 19, 1877, found itself unable to maintain, against the force of a mob, entire possession and control of its own property, and the property in its custody, including that of the plaintiff, and to operate its road. It then called upon the proper authorities, including the sheriff of Allegheny county, for assistance and protection; a requisition was made by said sheriff upon the governor for the assistance of the military power of the commonwealth.